# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MED-SYSTEMS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MASTERSON MARKETING, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | CASE NO. 11CV695 JLS (BLM) <br><br> **ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF MED-SYSTEMS AND COUNTER-DEFENDANT GALLO'S MOTION TO DISMISS; AND (2) DENYING COUNTER-DEFENDANT RITE AID'S MOTION TO DISMISS** <br><br> (ECF Nos. 13, 16) |

Presently before the Court are Plaintiff Med-Systems, Inc. ("Med-Systems") and Counter-Defendant David Gallo's ("Gallo") motion to dismiss Defendant Masterson Marketing, Inc.'s ("Masterson") counterclaim for copyright infringement (Mot. to Dismiss, ECF No. 13); and Counter-Defendant Rite Aid Corporation's ("Rite Aid") motion to dismiss Masterson's counterclaim for copyright infringement (Mot. to Dismiss, ECF No. 16). Also before the Court are the associated oppositions and replies. For the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Med-Systems and Gallo's motion to dismiss, and **DENIES** Rite Aid's motion to dismiss.

//

//

# BACKGROUND

**1. Factual Background**

Med-Systems distributes and sells "a nasal wash system that is intended to help relieve symptoms associated with sinus problems." (Countercl. ¶ 13, ECF No. 7)  Gallo is the CEO of Med-Systems, responsible for its day-to-day operations. (*Id.* ¶ 14)  In 2007, Med-Systems hired Masterson "to serve as the advertising and marketing agency" for Med-Systems. (*Id.* ¶ 15)  As such, Med-Systems and Masterson entered into an Agency Agreement with the following provision:

> The photographic license to all images produced including the rights licensed as stock photography on behalf of [Med-Systems] by [Masterson] are granted for the usage and time period stated on each contract.  It is understood and agreed upon by both parties that all additional usages of these licensed images outside of the usage stated on the contract must be negotiated prior to any usage granted and that no implied license will exist.

(*Id.* ¶ 16 (quoting Ex. 1))  Under this agreement and others identical to it, Masterson "created the design layout" and "provided the stock photographs" for several of Med-Systems' products. (*Id.* ¶ 19)  Thereafter, Masterson obtained certificates of registration from the U.S. Copyright Office for the work it created. (*Id.*)

In 2010, Masterson discovered that Med-Systems "had or was continuing to use images covered by Masterson's Copyright Registrations beyond the scope or duration of any license or authorization." (*Id.* ¶ 41)  Given the parties' apparent disagreement as to whether Masterson has a "copyrightable interest in the photographs of Med-Systems' Sin[u]Cleanse products, or in the packaging or advertising of these products," and whether "Med-Systems has the right to use these photographs and product packaging free of any claims of defendant," Med-Systems filed a complaint seeking declaratory relief and other claims against Masterson, (*Id.* ¶ 32), and Masterson filed a counterclaim for copyright infringement against Med-Systems, Gallo, and Rite Aid, (Countercl., ECF No. 7).

//
//
//

**2. Procedural Background**

On April 6, 2011, Med-Systems filed a complaint for declaratory relief and alleging fraud, breach of contract, trademark infringement, trade dress infringement, and breach of fiduciary duty against Masterson. (Compl., ECF No. 1). Masterson answered the complaint on May 6, 2011, (Answer, ECF No. 6), and contemporaneously filed a counterclaim[1] against Plaintiff Med-Systems and Counter-Defendants Gallo and Rite Aid (Countercl., ECF No. 7).

Thereafter, Plaintiff Med-Systems and Counter-Defendant Gallo filed a motion to dismiss Masterson's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 27, 2011. (Mot. to Dismiss, ECF No. 13)[2] On June 9, 2011, Rite Aid also filed a motion to dismiss pursuant to Rule 12(b)(6) and 12(b)(1). (Mot. to Dismiss, ECF No. 16) Masterson filed its opposition to these motions on July 7, 2011. (Resp. in Opp'n, ECF No. 20); (Resp. in Opp'n, ECF No. 21) Med-Systems and Gallo's reply and Rite Aid's reply were filed on July 15, 2011. (Reply in Supp., ECF No. 23); (Reply in Supp., ECF No. 24).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, — US — , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

---

[1] Though Masterson titles its pleading as a "cross-complaint," it is better characterized as a "counterclaim." Thus, the Court refers to Masterson's pleading as such, and refers to the defendants named in that pleading as "Counter-Defendants."

[2] Med-Systems and Gallo's motion to dismiss purported to seek dismissal of the third count against Rite Aid. (Mot. to Dismiss, ECF No. 13) Rite Aid later filed a motion to dismiss on its own behalf. (Mot. to Dismiss, ECF No. 16) The Court will consider the motions in turn, and will not consider the arguments raised in Med-Systems and Gallo's motion as to dismissal of the third count against Rite Aid.

1  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
2  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a
3  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,
4  129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

5       "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
6  accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,
7  550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts
8  pled "allow[] the court to draw the reasonable inference that the defendant is liable for the
9  misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must
10 be probable, but there must be "more than a sheer possibility that a defendant has acted
11 unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible
12 entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept
13 as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific
14 analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation
15 omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere
16 possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is
17 entitled to relief.'" *Id.* Moreover, "for a complaint to be dismissed because the allegations give
18 rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading."
19 *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

20      Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court
21 determines that the allegation of other facts consistent with the challenged pleading could not
22 possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.
23 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
24 1986)). In other words, where leave to amend would be futile, the Court may deny leave to
25 amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

26 //
27 //
28 //

# ANALYSIS

Med-Systems and Gallo move to dismiss Masterson's counterclaim on the grounds that "Masterson does not allege facts to support a claim of direct, contributory or vicarious copyright infringement." (Mot. to Dismiss 1, ECF No. 13) Rite Aid moves to dismiss Masterson's counterclaim on the grounds that "Masterson has failed to allege facts supporting a claim of direct, contributory, or vicarious copyright infringement as to Counter-Defendant Rite Aid," and for "lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1)." (Mot. to Dismiss 1, ECF No. 16)[3]

**1. Failure to State a Claim of Direct Infringement against Med-Systems and Rite Aid**

To present a prima facie case of direct copyright infringement, a party must satisfy two requirements: "(1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (citing 17 U.S.C. § 501(a)). Under the copyright laws, the registration of a copyright certificate "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997). The burden then shifts to the alleged infringer to prove the invalidity of the copyright. *Id.* The presumption can be rebutted if the party "offer[s] some evidence or proof to dispute or deny the . . . prima facie case of infringement." *Id.*

//
//
//

---

[3] Med-Systems and Gallo's motion to dismiss purports to dismiss several claims that Masterson has not alleged, and the Court will not consider those arguments here. Specifically, the motion to dismiss addresses claims of direct and vicarious infringement against Gallo, (*See* Mot. to Dismiss 7–9, 12–14, ECF No. 13), but Masterson's counterclaim only alleges contributory infringement, (Countercl. ¶ 64, ECF No. 7 (". . . thereby making Gallo a contributory infringer.")); (*see also* Resp. in Opp'n 9–11, ECF No. 20). Likewise, Rite Aid's motion addresses claims of contributory and vicarious infringement against Rite Aid, (*See* Mot. to Dismiss 9–11, ECF No. 16), but Masterson's counterclaim only alleges direct infringement, (Countercl. ¶¶ 69–76, ECF No. 7); (*see also* Resp. in Opp'n 9–11, ECF No. 21).

*A. Ownership of the Allegedly Infringed Material*

The motions to dismiss argue that Masterson fails to state a claim because "Masterson has failed to allege ownership of the copyrights that are the subject of the alleged infringement." (Mot. to Dismiss 5, ECF No. 13); (Mot. to Dismiss 5, ECF No. 16)  In its counterclaim, Masterson alleges that it owns several copyright registrations over the allegedly infringing materials, and attached as evidence of its ownership copies of the registration of several copyright certificates. (Countercl. ¶¶ 19, 21, 23, 25, 27–28, 33–34, 39–40, ECF No. 7); (Exs. 4, 6–9, 11–12, 16, 19, 22, ECF Nos. 7-1, 7-2 (certificates of registration issued by the U.S. Copyright Office))  Pursuant to 17 U.S.C. § 410(c), these certificates constitute prima facie evidence not only of the validity of the copyright, but also of the "facts stated in the certificate."

Each of the certificates of registration identifies Masterson as the author.  Under 17 U.S.C. § 201(a), "Copyright in a work . . . vests initially in the author or authors of the work."  Thus, the certificates of registration listing Masterson as "author" constitute prima facie evidence that Masterson is the owner of the allegedly infringing material.

The parties' first attack on Masterson's ownership is based on the fact that each of the certificates of registration list the copyrighted work as "work made for hire."  (Mot. to Dismiss 5–6, ECF No. 13); (Mot. to Dismiss 5–6, ECF No. 16)  They argue that because of this, Masterson is not the true owner of the copyright, but rather it belongs to Med-Systems because it "is work prepared by an employee (Masterson) within the scope of his or her employment (by Med-Systems)."  (Mot. to Dismiss 6, ECF No. 13); (Mot. to Dismiss 6, ECF No. 16)  The parties do not contend that each of the certificates of registration contain mistakes as to authorship.  Rather they argue that, as written, the certificates show that Med-Systems—not Masterson—is the owner of the copyright because the registrations are each designated as works made for hire.  (*See* Mot. to Dismiss 5–6, ECF No. 13); (*See also* Mot. to Dismiss 5–6, ECF No. 16)  This argument is unavailing, however.

Pursuant to 17 U.S.C. § 201(b), "In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author" and "owns all of the rights comprised in the copyright."  Each of the certificates of registration identify Masterson as the

1 author of the work and mark that the work was made for hire. If, as Med-Systems and Gallo
2 argue, Masterson was the "employee" and Med-Systems the "employer," the certificates of
3 registration would list Med-Systems as the author of the work, not Masterson.[4] Thus, the parties'
4 argument that Masterson failed to allege ownership because the certificates of registration list each
5 of the works as a work made for hire fails and does not rebut the presumption that Masterson owns
6 the valid copyright.

7 The second attack on Masterson's ownership argues that the works are not copyrightable
8 because they are derivative works. (Mot. to Dismiss 10–11, ECF No. 13); (Mot. to Dismiss 8–9,
9 ECF No. 16)  A copyrighted work "based upon one or more preexisting works" is a "derivative
10 work." 17 U.S.C. § 101. "If the pre-existing work that serves as the basis for a derivative
11 [work] . . . is itself protected by copyright, then its unauthorized incorporation into a derivative or
12 collective work constitutes copyright infringement."  3 Melville B. Nimmer & David Nimmer,
13 Nimmer on Copyright § 3.06 (2011) (footnotes omitted); *see also* 17 U.S.C. § 103(a). To be
14 deemed a derivative work, the preexisting work that the derivative work is based on must be
15 copyrightable under the Copyright Act. *Ets-Hokin v. Skyy Spirits*, 225 F.3d 1068, 1079 (9th Cir.
16 2000). The fact that a work is afforded some intellectual property protection—such as trademark
17 or patent protection—"is irrelevant to deciding whether the [work] is a preexisting work under the
18 Copyright Act." *Id.* at 1079–80.

19 Here, Masterson has alleged, for example, that it "created the design layout for the product
20 packaging and provided the stock photographs." (Countercl. ¶ 21, ECF No. 7). Thereafter,
21 Masterson obtained copyright registration certificates for the work that it created. Med-Systems

---

[4]Masterson explains the authorship of the certificate of registration as follows:

> By definition, a corporation's acts are performed by its employees, in this case Ed Masterson and Alex Masterson. Pursuant to 17 U.S.C. § 201(b), all copyrightable work performed by employees of a corporation are 'works for hire', and the corporation is considered the 'author'. Accordingly the only way to complete a copyright application where an employee for a corporation prepares the copyrightable work for the employer is for the employer to be identified as the 'author' and work to be identified as a 'work for hire'.

(Resp. in Opp'n, 4–5, ECF No. 20)

1  argues, however, that Masterson's work is derivative because "Med-Systems owns the copyrights
2  for the SinuCleanse® photos, images, product packaging text and the trademarks for the
3  SinuCleanse® family of products that Masterson used to compile the SinuCleanse® product
4  packaging."  (Mot. to Dismiss 11, ECF No. 13); (Mot. to Dismiss 8, ECF No. 16)  Although
5  Masterson's complaint makes no reference to the use of such works provided to it by Med-
6  Systems, Med-Systems refers to several trademark registrations in its complaint, (Compl. ¶ 11,
7  ECF No. 1), and alleges that it "provided [Masterson] with Medsystems' copyrighted text, images,
8  registered SinuCleanse trademarks, and design patent protected products for all of the SinuCleanse
9  photographs that Defendant took and product packaging and advertising that it compiled," (*Id.*
10 ¶ 17).  The parties also purported to attach evidence of Med-Systems' "ownership of the original
11 copyrights for the SinuCleanse®" to their reply briefs, but only included trademark registrations
12 and a copy of Med-Systems' design patent for the nasal wash device.  (*See* Reply in Supp., Ex. 1,
13 ECF No. 23-1); (*See also* Reply in Supp., Ex. 1, ECF No. 24-1)

14     Even if considered by the Court at this stage, none of the documents provided by the
15 parties establish that the underlying work is copyrightable.  "Although it is true that [trademark
16 and patent registration] may arguably afford [Med-Systems] some intellectual property protection
17 with regard to its [work] . . . that protection is irrelevant to deciding whether the [work] is
18 preexisting work under the Copyright Act."  *Ets-Hokin*, 225 F.3d at 1079–80.   The parties have
19 not shown that the underlying work for each of Masterson's copyrighted works is copyrightable,
20 but merely that it is covered by trademark and patent protection.  Accepting the allegations of
21 Masterson's complaint as true, the Court must conclude that it is possible that some or all of
22 Masterson's copyrighted works are not derivative, and that Masterson has therefore alleged
23 sufficient facts to demonstrate its ownership of the copyrights at issue.  Thus, the presumption of
24 ownership has not been rebutted.
25 //
26 //
27 //
28 //

In sum, because Masterson is listed as the author on the certificate of registration, and because this presumption of ownership was not rebutted,[5] Masterson has alleged sufficient facts as to the first element of a claim for direct infringement.

### *B. Violation of an Exclusive Right*

The second element of a claim for direct infringement requires a showing that the alleged infringer violated an exclusive right granted under 17 U.S.C. § 106. That section provides that the owner of a copyright has the exclusive rights to do any of the following: (1) reproduce, (2) prepare derivative works, (3) distribute, and (4) perform or display the work publicly. 17. U.S.C. § 106.

Med-Systems and Gallo's motion to dismiss concedes that Masterson has alleged that Med-Systems violated an exclusive right under 17 U.S.C. § 106. (*See* Mot. to Dismiss 7, ECF No. 13) The Court also concludes that Masterson has alleged sufficient facts as to this element. (*See* Countercl. ¶ 41, ECF No. 7) Thus, because Masterson has alleged sufficient facts to state a claim for direct infringement against Med-Systems, the motion to dismiss the first count for copyright infringement against Med-Systems is **DENIED**.

With regard to the direct infringement claim against Rite Aid, Masterson has alleged that, without its authorization, Rite Aid displayed and distributed an image covered by one of Masterson's registered copyrights on Rite Aid's "nasal relief sinus wash neti pot kit." (Countercl. ¶ 71, ECF No. 21) The Court finds this allegation sufficient to state a claim that Rite Aid violated one of Masterson's exclusive rights under § 106. Thus, Masterson has alleged sufficient facts to state a claim for direct copyright infringement against Rite Aid and Rite Aid's motion to dismiss for failure to state a claim is also **DENIED**.

---

[5]The parties also dispute Masterson's ownership by arguing that "Med-Systems' reasonable assumption was that any copyright registrations would be filed under Med-Systems' ownership." (Mot. to Dismiss 11, ECF No. 13); (Mot. to Dismiss 9, ECF No. 16) They base this conclusion on the fact that "[i]n the individual project contracts . . . mention is made of 'copyrights,'" and therefore any copyright should have been registered in Med-Systems' name. (Mot. to Dismiss 11, ECF No. 13); (Mot. to Dismiss 9, ECF No. 16) This argument is wholly without merit. The contracts referred to list "copywriting" among the services provided by Masterson. (Exs. 3, 5, 10, 15, 18, 21, ECF Nos. 7-1, 7-2) The parties have apparently confused the word "copyrighting" with its homonym "copywriting." Med-Systems contracted not for Masterson to "copyright" the prepared works on behalf of Med-Systems, but rather for Masterson to "write[] . . . advertising or publicity copy." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 276 (11th ed. 2003) (defining "copywriter").

**2. Failure to State a Claim for Contributory Infringement Against Gallo**

Masterson's second claim contends that Gallo is liable for contributory copyright infringement due to his knowledge and authorization of the infringing use of Masterson's copyrighted works. (Countercl. ¶¶ 58–68, ECF No. 7) A party may be liable for contributory copyright infringement if it "(1) has knowledge of a third party's infringing activity, and (2) 'induces, causes, or materially contributes to the infringing conduct.'" *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)).

**A.  *Knowledge of Med-Systems' Infringing Activity***

As to the knowledge element, Masterson has alleged that Gallo "was charged with the day to day operations of the business," (Countercl. ¶ 62, ECF No. 7) "was the signatory on every contract," (*Id.* ¶ 63), and "was fully aware of the terms of usage for all images," (*Id.*). Masterson argues in its opposition to the motion to dismiss that the knowledge element can be satisfied by mere "knowledge of the infringing activities," rather than knowledge that the activities are infringing. (Resp. in Opp'n 10, ECF No. 20) While this Court disagrees with Masterson's characterization of the knowledge element, it agrees that Masterson has alleged sufficient facts to satisfy it. To be liable for contributory infringement, the party must not only have knowledge of the infringing activities, it must also have knowledge that those activities are infringing. *See* 3 Nimmer & Nimmer, § 12.04[A][3][a] ("[I]f there is knowledge that the work in question constitutes an infringement, then one who causes another to infringe will himself be liable as an infringer.").

Here, Masterson has alleged sufficient facts to demonstrate that Gallo had knowledge that Med-Systems' display and use of the copyrighted images was an infringing activity. Though Masterson did not specifically allege that Gallo had knowledge of the existence of the copyright registrations at issue, by alleging that Gallo was "fully aware of the terms of usage for all images" Masterson has alleged sufficient facts to survive the motion to dismiss, as this allegation "support[s] a reasonable inference" that Gallo knew the images were copyrighted. *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

*B. Inducement of Med-Systems' Infringing Conduct*

As to the inducement element, Masterson must allege facts showing that Gallo "induce[d], cause[d], or materially contribute[d] to the infringing conduct." *Perfect 10*, 494 F.3d at 796. One can be liable as a contributory infringer for inducing infringement by another where "affirmative steps [are] taken to foster infringement." *Id.* at 800 (quoting *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919 (2005)). In order to "materially contribute," Gallo must have a "direct connection to that infringement." *Id.* at 796.

Here, the Court finds that Masterson has not alleged sufficient facts to show that Gallo induced or materially contributed to the infringing conduct. Masterson's counterclaim contains no factual allegations supporting a finding that Gallo is in any way responsible for Med-Systems' use of the copyrighted materials beyond the licensing term. Masterson merely alleges that Gallo was involved in all of the contracting with Masterson, and not that Gallo took any affirmative steps to foster Med-Systems' distribution and display of the copyrighted materials, or that Gallo had a direct connection to that infringement beyond his role as CEO of the company. (*See* Countercl. ¶¶ 62–64, ECF No. 7) Masterson must allege that Gallo had some involvement in directing the infringing use of the photos in order to state a claim for contributory infringement against Gallo, and such allegations are lacking here. Masterson's conclusory allegation that Gallo "authorized all of the unauthorized usage of images covered by Masterson's Copyright," (*Id.* ¶ 64), is insufficient to withstand a motion to dismiss as this Court need not accept as true Masterson's "legal conclusions," *Iqbal*, 129 S. Ct. at 1949.

Thus, because Masterson has failed to state a claim for contributory infringement against Gallo because it did not allege that Gallo induced or materially contributed to Med-Systems' alleged direct copyright infringement, Masterson's second claim for contributory infringement against Gallo should be **DISMISSED**. However, because the Court finds that Masterson could allege additional facts consistent with the challenged pleading, the contributory infringement claim is dismissed **WITHOUT PREJUDICE** and Masterson shall have an opportunity to amend. *See DeSoto*, 957 F.2d at 658.

//

**3. Lack of Subject Matter Jurisdiction Over Direct Infringement Claim Against Rite Aid**

A party may move to dismiss a complaint for lack of subject matter jurisdiction, and the Court must dismiss the action if "the court determines at any time that it lacks subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1), (h)(3). The plaintiff bears the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 538 F.3d 1107, 1110 (9th Cir. 2008). The Court must first determine whether it has jurisdiction, and must not reach the merits where jurisdiction is lacking. *Bell v. Hood*, 327 U.S. 678, 682 (1946); *Orff v. United States*, 358 F.3d 1137, 1151 (9th Cir. 2004).

Here, Masterson's counterclaim asserts federal question subject matter jurisdiction. (Countercl. ¶ 5, ECF No. 7). To determine whether federal question jurisdiction exists, the Court looks to the plaintiff's complaint. *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002). In this case, Masterson's underlying claim is for copyright infringement, governed by the copyright laws of the United States. Thus, the claim arises under federal law and this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

Rite Aid acknowledges that "[i]t is firmly established that a district court's subject-matter jurisdiction is not defeated by the absence of a valid (as opposed to an arguable) cause of action." (Mot. to Dismiss 12, ECF No. 16 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 83 (1998)) Nevertheless, Rite Aid argues that this Court lacks subject matter jurisdiction over Masterson's copyright infringement claims because they are "immaterial, wholly insubstantial and frivolous, or otherwise so devoid of merit as not to involve a federal controversy." (*Id.* (quoting *Steel Co.*, 523 U.S. at 83)) As stated above, however, this Court concludes that Masterson has alleged sufficient facts to state a claim for direct copyright infringement against Rite Aid. Thus, Masterson's counterclaim is not "immaterial, wholly insubstantial, and frivolous," and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Rite Aid's motion to dismiss for lack of subject matter jurisdiction is therefore **DENIED**.

//
//

**CONCLUSION**

For the reasons stated above, the Court (1) **DENIES** Med-Systems and Gallo's motion to dismiss as to Masterson's counterclaim for direct copyright infringement against Med-Systems; (2) **GRANTS** Med-Systems and Gallo's motion to dismiss as to Masterson's counterclaim for contributory copyright infringement against Gallo, and **DISMISSES** Masterson's counterclaim **WITHOUT PREJUDICE**; and (3) **DENIES** Rite Aid's motion to dismiss Masterson's counterclaim for direct copyright infringement pursuant to Rules 12(b)(1) and 12(b)(6).

**IT IS SO ORDERED.**

DATED: November 23, 2011

Honorable Janis L. Sammartino
United States District Judge